# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

ADRIAN DESHUN DELK,        )
                         )
      Plaintiff,          )
                         )
VS.                    )      No. 16-1275-JDT-cgc
                         )
HARDEMAN COUNTY       )
CORRECTIONAL FACILITY, ET AL.,  )
                         )
      Defendants.      )

---

## ORDER SEVERING AND TRANSFERRING CLAIMS, PARTIALLY DISMISSING COMPLAINT, AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANTS

---

On October 21, 2016, Plaintiff Adrian Deshun Delk, who is incarcerated at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, a motion to proceed *in forma pauperis*, and a motion for appointment of counsel. (ECF Nos. 1, 3 & 4.) Delk's complaint concerns his previous incarceration at Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. The Court issued an order on October 24, 2016, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) In the year that followed, Delk filed numerous additional exhibits and "evidence." (ECF Nos. 12, 14, 15, 17 to 22, 24 & 26.) The Court granted Delk's motions to file the exhibits but declined to consider any additional

documents aside from the complaint during the screening process. (ECF No. 27 at PageID 512.) The Court also denied Delk's motion for appointment of counsel. (*Id.* at PageID 511.)

On November 2, 2018, Delk filed an amended complaint that is 79 pages in length and also includes 301 pages of exhibits and attachments. (ECF No. 31.) The Clerk shall record the Defendants as the HCCF; HCCF Case Managers Columbus Molone, Inell Allen and Tomicka McKinnie; HCCF Corrections Officers (C/O) Danita Woods and Latoya Louden; HCCF Lieutenant Eric Austin; Laura Petty and Thelma Bumpus, nurses at the South Central Correctional Facility (SCCF); Jasper Brewster, a dentist at SCCF; Bernhard Dietz, a doctor at HCCF; Kent Joy, HCCF Mailroom Manager; Kelsey Gates, an Internal Affairs Officer at HCCF; former HCCF Warden Grady Perry;[1] Thomas Coreman, HCCF Program Manager; HCCF Grievance Sergeants Latoya Brown and Rebeca Willison; Dorthy Robertson, a Unit Manager at HCCF; Elsie Smith, a teacher at HCCF; Keinaenna Jackson, a Disciplinary Sergeant at HCCF; and Carlson Brent, a Segregation Sergeant at HCCF.

Delk sues the Defendants in their individual capacities and seeks various damages in varying amounts from each. (ECF No. 31 at PageID 600-06.) Delk also requests various

---

[1] Grady Perry is now Warden at SCCF. *See* https://www.tn.gov/correction/sp/state-prison-list/south-central-correctional-facility.html. The current Warden of HCCF is Hilton Hall, Jr. *See* https://www.tn.gov/correction/sp/state-prison-list/hardeman-county-correctional-facility.html. Delk sues Warden Perry in only his individual capacity, so the docket does not require modification to reflect the change in wardens.

declaratory relief against Defendants Joy, Coreman, Brown, Willison, Robertson, and Smith. (*Id.* at PageID 602-04.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Delk filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Delk raises numerous claims against several Defendants at HCCF and SCCF that involve or stem from assaults that occurred on March 4, 2016, June 8, 2017, November 4, 2017, and January 18, 2018. The Court will separately discuss the facts pertaining to each

Defendant, or group of Defendants where possible, and then analyze the relevant law for the related claim or claims.

*Claims Against SCCF Defendants*

Delk's primary claims relate to various incidents during his incarceration at HCCF. However, in his amended complaint he asserts additional claims against Defendants Laura Petty, Thelma Bumpus and Jasper Brewer, employees at SCCF.   (ECF No. 31 at PageID 540-41, 552, 564-67.)  The proper joinder of parties in a single lawsuit is governed by Federal Rule of Civil Procedure 20.[2]  Rule 20(a)(2) governs the joinder of Defendants and provides that multiple Defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all Defendants will arise in the action.

The Seventh Circuit has cogently explained how Rule 20(a)(2) applies to prisoner plaintiffs:

> [M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different Defendants belong in different suits, not only to prevent the sort of morass that this [multi]-claim, [multi]-Defendant suit  produced but also to ensure that prisoners pay the required filing fees–for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeal that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g). . . .

_____

[2] Once it is determined whether the parties in a case are properly joined under Rule 20, the joinder of multiple claims against any particular party is governed by Rule 18(a), which provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

. . . .

> . . . . A buckshot complaint that would be rejected if filed by a free person–say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions–should be rejected if filed by a prisoner. . . .

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Dykes v. Benson*, No. 1:18-cv-664, 2018 WL 3708054, at *4 (W.D. Mich. Aug. 2, 2018) ("Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.").

The claims relating to Delk's time at SCCF are misjoined in this action because they are completely unrelated to Delk's various claims about his incarceration at HCCF and seek relief against entirely unrelated Defendants.

Moreover, the Western District of Tennessee is not the proper venue for Delk's claims against the SCCF Defendants. Twenty-eight U.S.C. § 1391(b) authorizes the commencement of a civil action only in a judicial district:

> (1) where any Defendant resides, if all Defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any Defendant may be found, if there is no district in which the action may otherwise be brought.

The claims against Defendants Petty, Bumpus and Brewer have no connection with this district. The SCCF is located in Clifton, Tennessee, in Wayne County. Wayne County is part of the Columbia Division of the Middle District of Tennessee. 28 U.S.C. § 123(b)(3).

Federal Rule of Civil Procedure 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Additionally, 28 U.S.C. § 1406(a) states "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The claims against the SCCF Defendants should not have been brought in this district. The Court finds that severing the claims raised against Defendants Petty, Bumpus and Brewer and transferring them to the Middle District of Tennessee is the appropriate remedy for the misjoinder. Accordingly, the claims in the amended complaint against Defendants Laura Petty, Thelma Bumpus and Jasper Brewer are hereby SEVERED from this case and TRANSFERRED, pursuant to 28 U.S.C. § 1406(a), to the Columbia Division of the United States District Court for the Middle District of Tennessee.[3]

*Claims Against HCCF*

The Court construes Delk's claims against HCCF as an attempt to assert claims against CoreCivic, a private corporation that operates the HCCF.[4] "A private corporation that performs the traditional state function of operating a prison acts under color of state

---

[3] The documents associated with the severed and transferred claims are Docket Entries 1, 3, 6, 27 and 31. The Clerk is DIRECTED to remove Defendants Petty, Bumpus and Brewer as parties in this case.

[4] *See* https://www.tn.gov/content/tn/correction/sp/state-prison-list/hardeman-county-correctional-facility.html ("Hardeman County Correctional Facility is owned by the Hardeman County Correctional Facilities Corporation, which contracts with CoreCivic for management of the prison.").

law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). CoreCivic "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To prevail on a § 1983 claim against CoreCivic, Delk "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.*

Delk has not alleged that he suffered an injury because of conditions attributable to an unconstitutional policy or custom of CoreCivic. He instead attributes his injuries to the individual actions of other Defendants. He has therefore failed to state a claim against the HCCF/CoreCivic.

*Untimely Claims*

Some of Delk's claims in his amended complaint are untimely. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in

Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)(1). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005).

Delk's original complaint is deemed filed on October 18, 2016, the date it was received in the HCCF mailroom. (ECF No. 1-8 at PageID 165.) He signed the amended complaint and gave it to prison officials for mailing on October 29, 2018. (ECF No. 31-26 at PageID 908.) *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (deeming a complaint filed "when it is handed over to prison officials for mailing to the court"). Claims in Delk's amended complaint may "relate back" to conduct or events first set forth in the original complaint. *See* Fed. R. Civ. P. 15(c)(2). If the claims meet the requirements of Rule 15(c)(2) (or another subsection of Rule 15(c)), they will be considered filed as of October 18, 2016. Under Rule 15(c), most of the claims in Delk's amended complaint relate back to a claim alleged in the original complaint and are therefore timely.

The amended complaint does, however, add claims against several new Defendants not named in his original complaint, specifically Defendants Willison, Robertson, Smith, Brent, Allen and McKinnie. The Sixth Circuit has held that "relation back of an amendment adding a new *party*"—rather than a new claim or defense against an existing party—is not permitted under Federal Rule of Civil Procedure 15(c). *See Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318-19 (6th Cir. 2010). The new claims against these Defendants will therefore not relate back to the original complaint. For these new claims to be timely, they must have accrued within a year of the date Delk filed his amended complaint; that is, the events of which he complains must have occurred on or after October 29, 2017.

Delk first included his claims against Defendant Robertson in an "exhibit" he filed on February 23, 2017. (ECF No. 18.) The exhibit concerns allegations against Defendant Robertson that are repeated in the amended complaint. (ECF No. 31 at PageID 547.) In its previous order, the Court granted Delk's motion to file the exhibit. (ECF No. 27 at PageID 512.) Based on the Court's previous order accepting ECF No. 18 as an exhibit to the original complaint, the Court will allow the claims against Defendant Robertson to relate back to the complaint and will consider these claims timely.

The same cannot be said about the claims against Defendants Willison, Smith, Brent, Allen and McKinnie. Delk's original complaint does not raise claims against these Defendants and they are not named in any "exhibit" the Court previously accepted. The Court must individually address the claims against each of these Defendants to determine if they concern events occurring on or after October 29, 2017.

Delk's claim against Defendant Willison relates to a grievance Delk alleges Willison wrongly rejected in March or April 2017. (ECF No. 31 at PageID 546-47; ECF No. 31-18.) His claim against Defendant Smith relates to a disciplinary report from November 3, 2016. (ECF No. 31 at PageID 547-48; ECF No. 31-13.) These claims are untimely.

The claim against Defendant Brent relates to a disciplinary report Brent allegedly wrote on January 3, 2018. (ECF No. 31 at PageID 550.) Delk's claim against Defendant Allen relates to events that occurred on November 2 through 4, 2017. (ECF No. 31 at PageID 549.) These claims are timely.

Delk's claim against Defendant McKinnie appears towards the end of the amended complaint, (ECF No. 31 at PageID 594), and refers to factual allegations made in paragraphs 32, 33 and 34 of the pleading, (*id.* at PageID 553). Those earlier factual allegations relate to events that occurred on February 16, 2018; March 3, 2017; and October 19, 2018. (*Id.*) The only event mentioned in both sections—and the only one that contains allegations against Defendant McKinnie—is set out in paragraph 32. The incident allegedly occurred on February 16, 2018, and involved moving Delk into a different cell. The Court will therefore allow only the claim related to the incident set out in paragraph 32 to proceed against Defendant McKinnie. The other claims, to the extent Delk seeks to hold Defendant McKinnie responsible, fail to state a claim or are untimely.

The claims against Defendants Willison and Smith are therefore DISMISSED as untimely. The claims against Defendants Brent and Allen, and the claim against Defendant McKinnie related to an alleged incident on February 16, 2018, will be addressed later in this order.

### Defendant Molone

Delk alleges that he twice submitted a cell-change form to his case manager, Defendant Molone, on February 29, 2016, and March 4, 2016, after his cellmate threatened him. (ECF No. 31 at PageID 537.) Molone allegedly "forced" Delk to remain with the cellmate who made the threats. (*Id.*) Delk asserts the actions of Molone were deliberately indifferent to his life and safety and resulted in Delk "being viciously assaulted" by his cellmate and others. (*Id.* at PageID 558.)

Delk's allegations amount to a claim for deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component of an Eighth Amendment claim, a prisoner "must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

Delk allegedly twice informed Molone about the threats made to Delk by his cellmate, yet Molone refused Delk's request to change cells. Delk was then assaulted by the cellmate who threatened him. These allegations sufficiently allege Molone knew of yet disregarded a risk to Delk's safety. *See Farmer*, 511 U.S. at 833-34. Delk therefore has sufficiently alleged a claim of deliberate indifference against Defendant Molone.

*Defendant Woods*

Delk alleges that on March 4, 2016—after he was denied a cell change—Defendant Woods allowed Security Threat Group (SGT) inmates out of their cells in violation of Tennessee Department of Correction (TDOC) policy. (ECF No. 31 at PageID 537.) The inmates joined Delk's cellmate in moving Delk to cell 214, assaulting him, and keeping

him from seeking medical help. (*Id.*) Another inmate allegedly found Delk and called for help, fearing that Delk needed medical attention and might die from blood loss. (*Id.* at PageID 538.) Defendant Woods answered the help call and allegedly responded, "Oh well," and told the inmates "[n]ot to push the [call] button or you will receive a disciplinary report." (*Id.*) Delk asserts Defendant Woods's actions constituted deliberate indifference to his safety and medical needs. (*Id.* at PageID 559-60.)

Delk cannot state a claim under § 1983 based only on an alleged violation of TDOC policy. *See Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007). Delk, however, alleges that by violating TDOC policy, Defendant Woods deliberately disregarded the risk to his safety. He also alleges that Woods disregarded his need for medical treatment after the assault and instead threatened disciplinary charges. Both of these allegations sufficiently state a claim of deliberate indifference against Defendant Woods.

*Defendant Louden*

Delk next alleges that, after the inmates assaulted him, Defendant Louden found Delk in cell 214, ignored his injuries and request for medical treatment, and forced him back into his original cell with the same cellmate who had just attacked him. (ECF No. 31 at PageID 538.) Delk told Louden that his cellmate had perpetrated the assault, and Louden allegedly responded, "I don't care[.] [L]ock into the cell with him so I can do count." (*Id.*) Like Delk's claim against Defendant Woods, his allegations against Louden sufficiently state a claim for deliberate indifference to his need for medical treatment.

*Defendant Austin*

Delk alleges that Defendant Austin, as the supervisor of Defendants Woods and Louden, violated TDOC policy by failing to "enforce" Woods and Louden to keep the inmates who assaulted Delk locked in their cells.  (ECF No. 31 at PageID 539, 562.)  Delk asserts that, had Austin properly followed TDOC policy, Austin would have "correct[ed]" the actions of Woods and Louden and thereby prevented the assault on Delk.  (*Id.* at PageID 562-63.)

Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"  *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Thus, "a plaintiff must plead that each Government-official Defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted).  A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Delk alleges only that Defendant Austin's failure to follow TDOC policy led to the deliberately indifferent actions of Defendants Woods and Louden.  He does not allege Austin personally encouraged, participated in, or knowingly acquiesced to their actions.

14

Delk's allegations are therefore insufficient to hold Defendant Austin responsible for the attack or to state a claim for relief against Austin under § 1983.

*Defendant Dietz*

Delk alleges that Defendant Dietz refused to allow Delk to see a doctor about hearing loss Delk suffered from the assault. (ECF No. 31 at PageID 542.) Delk states Dietz ignored the order of a physician at Memphis Regional One Medical Center to check Delk's ears. (*Id.*) Dietz also allegedly has refused Delk's sick-call forms requesting treatment and has "interfered" with Delk's treatment from other doctors. (*Id.* at PageID 542, 568.) Delk alleges Dietz began refusing treatment only after learning that Delk had filed grievances against Dietz and brought this lawsuit. (*Id.* at PageID 568-69.) Delk states that he has lost his hearing because of Dietz's retaliatory actions. (*Id.* at PageID 568.)

Delk's allegations that Defendant Dietz refused treatment constitute a claim for deliberate indifference. Delk's allegations are thin, but he sufficiently states a claim for deliberate indifference based on Dietz's alleged refusal to allow Delk to see a doctor about Delk's loss of hearing.

Delk also alleges that Dietz has refused treatment as retaliation for Delk's grievances and lawsuit. The Court reviews Delk's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the Defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Delk's allegations sufficiently satisfy each element of a retaliation claim. First, Delk's filing of grievances and this lawsuit are protected conduct, and retaliating against Delk for filing them would constitute a constitutional violation. *See Hill*, 630 F.3d at 472-73; *Thaddeus-X*, 175 F.3d at 394. Second, Dietz's denial of medical treatment likely would deter a prisoner like Delk from filing grievances and pursuing this lawsuit because, as Delk alleges, he remains in pain and has filed several denied sick-call forms since the assault. *See O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014). Finally, Delk alleges Dietz refused medical treatment only after learning that Delk had filed his grievances and lawsuit. This "temporal proximity between the protected conduct and the adverse action" provides some circumstantial evidence that Dietz's adverse actions were motivated in part by Delk's protected conduct. *Id.* (citing *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004)); *see also Hill*, 630 F.3d at 475 (noting that "because of

the difficulty in producing direct evidence of an official's retaliatory motive, circumstantial evidence can suffice").  Delk therefore sufficiently states a claim against Defendant Dietz for retaliation in violation of the First Amendment.

*Defendant Joy*

Delk next alleges that on several occasions, Defendant Joy has opened Delk's legal mail outside his presence, shown it to other prison employees, and kept it from Delk for several days or longer.  (ECF No. 31 at PageID 542-44.)  Delk alleges that Joy's withholding of Delk's mail led to the dismissal of a state-court appeal and Delk being charged a fee.  (*Id.*)  According to Delk, Joy has attempted to conceal his actions by stamping Delk's mail with fake received-on dates.  (*Id.* at PageID 543.)  Delk alleges Joy's actions were in retaliation for Delk filing a grievance.  (*Id.* at PageID 542.)

Delk's allegations about his mail may constitute several different claims under the First Amendment.  First, Delk alleges that Joy improperly opened the following legal mail outside of Delk's presence: (1) a letter from the Deputy Clerk of the Tennessee Court of Appeals in Jackson, Tennessee, dated April 5, 2016; (2) a letter from the same Deputy Clerk dated May 22, 2016; and (3) a letter from a Tennessee General Sessions Court dated June 27, 2016.  (ECF No. 31 at PageID 544.)  "[M]ail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise."  *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003); *see also* TDOC Policy 507.02 IV.(O) (defining "privileged mail" to include correspondence from courts and court clerks); *id.* 507.02 VI.(C)(1) (mandating that privileged mail be opened "in the presence of the inmate addressee").  Allegations that prison officials have improperly opened two or

three pieces of legal mail suffices to state a claim under the First Amendment. *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Sallier*, 343 F.3d at 879-80; *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993)). Taking Delk's allegations as true, he adequately states a claim against Joy under the First Amendment for improperly opening his legal mail.

Delk's allegations regarding his mail also may amount to a First Amendment claim that he was denied access to the courts. Prisoners retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394. In addition, the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Delk alleges that because Defendant Joy withheld Delk's legal mail for several days, the state court dismissed Delk's appeal of the denial of a motion under Tennessee Rule of

Criminal Procedure 36.1. (ECF No. 31 at PageID 542-43.) Rule 36.1 provides the procedure for filing a motion to correct an illegal sentence. A motion to correct illegal sentence is a collateral action, and an appeal from the denial of a motion under Rule 36.1 does not constitute a "direct appeal" covered under a prisoner's right of access to the courts. Moreover, Delk does not describe the underlying cause of action, meaning the Court cannot determine whether his legal claim was nonfrivolous and therefore sufficient to support his allegation of an "actual injury." Lacking this necessary information, Delk's allegations are insufficient to state a claim that he was denied his right to access the courts.

Delk also fails to allege a claim of retaliation against Defendant Joy. Delk concludes that Joy withheld Delk's mail in retaliation for Delk filing grievances but fails to allege any facts to support that conclusion. Delk's conclusory statement alone is insufficient to attribute to Joy a retaliatory motive. *See Hill*, 630 F.3d at 475.

*Defendant Gates*

Delk alleges that he was jumped by three inmates on June 8, 2017. (ECF No. 31 at PageID 545.) After the attack he sent at least three letters to Defendant Gates telling her that he was "not safe and is in fear of his life while living in F-Unit." (*Id.* at PageID 572.) Delk alleges that Gates failed to use "her personal discretion" to protect him, and as a result Delk was again attacked and repeatedly stabbed by an inmate while in segregation on November 4, 2017. (*Id.* at PageID 572-73.) Delk alleges that the inmate who stabbed him was paid by an unspecified Defendant to attack Delk on November 4, 2017, because Delk had filed "paperwork naming the Defendants." (*Id.* at PageID 573.) Delk blames Gates for the attack and asserts she failed to investigate and protect him by moving Delk to a

different facility, though Delk does not state whether he ever requested a transfer. (*Id.* at PageID 545, 573-74.)

Delk's allegations fail to state a claim against Defendant Gates for deliberate indifference. Delk does not allege that Gates is responsible for the June 8 attack. He alleges only that she should have taken certain action after the attack. Prison officials must "take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832-33. However, prison officials owe no duty to prisoners to investigate a past assault. Delk's expectation of a transfer to a new facility goes beyond "reasonable measures" that officials must undertake to protect inmates. It is unknown whether Gates, who Delk labels an internal affairs employee at HFCC, could even grant a transfer. Moreover, Delk states that he was in segregation when he was stabbed on November 4. That Delk was stabbed by a different inmate in a separate part of the prison five months after he sent Gates letters about the June attack does not suffice to show that Gates was deliberately indifferent to Delk's safety.

### *Defendant Perry*

Delk next alleges that Defendant Perry, the former Warden of HCCF, failed to enforce TDOC policies and allowed employees to violate tier-management policies. (ECF No. 31 at PageID 545.) Delk alleges that Perry failed to instruct his staff to lock into their cells the inmates who attacked Delk on March 4, 2016. (*Id.* at PageID 575.) Delk asserts that Perry "condoned, encouraged and knowingly acquiesced in the conduct" of his employees. (*Id.* at PageID 545.)

Delk's allegations against Defendant Perry, like those against Defendant Austin, fail to state a claim. Delk seeks to hold Perry responsible in his role as Warden but fails to allege any facts showing that he was personally involved in any employee's unconstitutional behavior. Delk's unsupported statement that Perry "condoned, encouraged, and knowingly acquiesced in the conduct" of his employees is insufficient to provide the necessary nexus. *See Iqbal*, 556 U.S. at 679.

*Defendant Coreman*

Delk alleges that Defendant Coreman sent Delk to segregation because Delk did not wipe down a table, which Delk insists he forgot to do because of memory loss suffered from the March 4, 2016, attack. (ECF No. 31 at PageID 546.) Delk states he was punished by being locked in a wet shower in segregation and forced to eat his lunch there. (*Id.*) Once released, Delk alleges he was sent to live in a cell with an inmate who smeared his feces on the walls, sink, bunk, and door of the cell. (*Id.*) Delk asserts that Coreman acted in retaliation "because of the rumors of plaintiff filing 42 USC § 1983" and because Delk filed a grievance against Coreman. (*Id.* at PageID 576.)

Delk's allegations that Coreman unreasonably punished Delk for forgetting to wipe down a table fall under the Eighth Amendment. The conditions of a prisoner's confinement may be considered cruel and unusual when they deprive inmates of "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Gamble*, 429 U.S. at 103-04. A prisoner must allege "extreme

deprivations . . . to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

Delk alleges Coreman sent him to segregation in a wet shower and then to a cell smeared with feces. These conditions are undoubtedly unpleasant, but Delk does not allege how long he was forced to remain in either the shower or the feces-smeared cell, nor does Delk allege that he suffered any injury as a result of the conditions. *See Goforth v. Sumner Cnty.*, No. 3:13-CV-417, 2013 WL 1943020, at *3 (M.D. Tenn. May 9, 2013) (dismissing plaintiff's complaint that he was "forced to endure the smell and unsanitary presence of human feces smeared on his cell door for a period of 48 hours" because plaintiff failed to allege that he suffered any injury as a result of the conditions). While the alleged conditions of Delk's confinement may have been unacceptable, Delk fails to allege facts sufficient to state a conditions-of-confinement claim under the Eighth Amendment.

Delk also alleges that Coreman's actions were in retaliation for Delk filing this lawsuit and a grievance. Delk again fails to assert any facts in support of his claim of retaliation. He does not allege that Coreman punished him only after Delk had filed his lawsuit or a grievance. Delk alleges only that Coreman acted "because of the rumors" that Delk had filed or was about to file a lawsuit. Delk's unsupported conclusions for Coreman's motive do not suffice to state a claim of retaliation. *See Hill*, 630 F.3d at 475.

*Defendant Brown*

Delk alleges that Defendant Brown "used a fake section" of TDOC policy to deny his grievance. (ECF No. 31 at PageID 546.) Delk alleges Brown improperly denied his grievance under TDOC 501.01 VI.(C)(1) because it addressed "multiple issues." (*Id.*)

Delk asserts that Brown intentionally rejected his grievance to "sabotage" his § 1983 lawsuit, in violation of the First and Fourteenth Amendments. (*Id.* at PageID 547, 577.)

Delk fails to state a claim against Defendant Brown. "[T]here is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). Delk therefore is not entitled to relief on his claim that Brown improperly denied him access to HCCF's grievance procedure. *Id.* Moreover, contrary to Delk's reading of the policy, 501.01 VI.(C)(1) expressly prohibits filing a single grievance addressing multiple issues. *See* https://www.tn.gov/content/dam/tn/correction/documents/501-01.pdf#page=14.

*Defendant Robertson*

Delk alleges that Defendant Robertson wrongly denied him access to a notary public to notarize a motion he had prepared to send to the Tennessee Court of Criminal Appeals. (ECF No. 31 at PageID 547.) Robertson instead charged Delk with a disciplinary charge of "defiance" because Delk allegedly told Robertson "he would snitch on her." (*Id.*) Robertson filed the disciplinary report against Delk on February 17, 2017, and has allegedly been harassing Delk ever since. (*Id.*) Delk also alleges that Robertson failed to move him out of F-Unit after the June 8, 2017, attack referenced in his allegations against Defendant Gates. (*Id.* at PageID 548.)

Delk's allegations regarding the notary are construed as a claim that he was denied access to the courts. Like his similar claim against Defendant Joy, Delk's claim against Robertson fails. Delk does not allege that because he was denied a notary, he suffered any actual injury, e.g., that he could not file his motion. He alleges only that being denied a

notary "would cause delay in his appeal." (*Id.* at PageID 547.)  Even if he were unable to file the motion, Delk does not describe the motion or allege what remedy he lost without its filing.  *See Christopher*, 536 U.S. at 416.

Delk's allegations that Robertson has been harassing him are more involved.  Delk alleges that, after Robertson denied Delk a notary and filed the disciplinary report, Delk filed a grievance against Robertson.  (ECF No. 31 at PageID 587.)  Delk alleged in his grievance that he did not want Robertson "to send her hitmen to kill him like the other inmates who [were] killed in G-Unit, where they [were] allegedly beat to death by Dorthy Robertson inmates who work for her." (*Id.*)  Several months after filing the grievance, on November 4, 2017, Delk was repeatedly stabbed by an inmate.  (*Id.*)  Delk alleges that he "became intimidated by Defendant Dorthy Robertson and had stopped sending legal mail, and expressed in his TDOC grievance that he don't want Defendant Dorthy Robertson to send her hit men." (*Id.*)

Delk's allegations that Defendant Robertson hired inmates to kill Delk eight or nine months after he grieved her for filing a disciplinary report against him fail to state a claim.  Delk offers no facts in support of his assertions that Robertson plotted to kill him in retaliation for his grievance, and his allegations do not set "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Delk's allegations also fail to state a claim of retaliation.  Filing grievances is protected conduct, but Delk's "conclusory assertions do not show a sufficient causal nexus" between the February 2017 grievance and the assault in November 2017. *See Siggers v. Renner*, 37 F. App'x 138, 141

(6th Cir. 2002) (rejecting prisoner's claim that attack in April 1999 was in retaliation for incident that occurred nearly one year earlier).

Delk's allegations that Defendant Robertson refused to move Delk out of F-Unit fail to state a claim for the same reasons his identical claim against Defendant Gates failed. *See supra.*

### Defendant Jackson

Delk next alleges that, at a disciplinary hearing, Defendant Jackson refused to allow one of Delk's witnesses (a C/O) to testify, threatened to return Delk to segregation, and removed Delk from the hearing before it had ended. (ECF No. 31 at PageID 548, 591-92.) Delk insists that Jackson was "close friends" with Defendant Coreman, and that the two Defendants "incapacitated and sabotage[d]" the hearing. (*Id.* at PageID 591.) After the hearing, Delk was sentenced to 10 days in segregation. (*Id.* at PageID 592.) Delk asserts these actions deprived him of his rights under the Sixth and Fourteenth Amendments. (*Id.* at PageID 591.)

The guarantees of the Sixth Amendment apply only to "criminal prosecutions." *Kirby v. Illinois*, 406 U.S. 682, 690 (1972). Prison disciplinary hearings, however, are not "criminal prosecutions" and therefore do not confer the same rights. *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Due Process Clause of the Fourteenth Amendment affords certain procedural protections to a prisoner charged with a disciplinary offense that may result in the loss of good time or sentence credits. *Wolff*, 418 U.S. at 563-66. Segregation of an inmate may involve the deprivation of a state-created liberty interest protected by the due process clause "if the segregation

imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)).

Delk does not allege that, as a result of the hearing, he lost good-time credits or that the duration of his sentence was affected. Delk alleges only that he was sent to segregation for ten days. Ten days in segregation is not an atypical or significant hardship on Delk. These allegations do not establish the existence of a liberty interest entitled to procedural due-process protections. Delk therefore fails to state a claim against Defendant Jackson under either the Sixth or Fourteenth Amendment.

*Defendant Brent*

Delk alleges that on January 3, 2018, unspecified prison officials forced Defendant Brent to write a disciplinary report against Delk for not moving to a different cell. (ECF No. 31 at PageID 550.) According to Delk, these unspecified Defendants "was attempting to kill the Plaintiff by moveing [sic] him into another cell with a paid inmate to stab him. Plaintiff was wrote up for not leaving his cell to go and get killed." (*Id.*) On January 17, 2018, the unnamed Defendants allegedly moved Delk into protected custody with an inmate who was a member of the gang that stabbed him on November 4, 2017, and who attacked Delk on January 18, 2018. (*Id.* at PageID 550-51.) Delk acknowledges that "Defendant Carlson Brent may not wanted to harm Plaintiff . . . [but] was forced to harm Plaintiff by his supervisor." (*Id.* at Page ID 594.)

Delk does not state a claim of deliberate indifference against Defendant Brent. Delk does not allege that Brent is one of the Defendants responsible for moving Delk into the

cell with the inmate who attacked him. In fact, Delk at no point states who actually transferred him. He alleges only that Brent was forced to discipline Delk by order of Brent's supervisor, whom Delk does not name, and that Brent did not want Delk to get hurt. Delk's own allegations provide that Brent did not act with the require "culpable state of mind" to hold Brent responsible for the attack. These allegations wholly fail to establish that Brent acted with deliberate indifference towards Delk's health or safety.

*Defendant Allen*

Delk next alleges that he and another inmate, into whose cell Delk wished to be transferred, tried to tell Defendant Allen about threats Delk's current cellmate at the time had made towards Delk. (ECF No. 31 at PageID 549.) Allen allegedly kicked both inmates out of her office. (*Id.*) Delk was then stabbed on November 4, 2017. (*Id.*) Delk alleges that Allen intentionally refused to move Delk to his desired cell as part of the alleged plot to have Delk stabbed. (*Id.*)

Delk's allegations against Defendant Allen, like those against Defendants Robertson and Brent, fail to state a claim regarding the alleged planned attack on Delk. Delk provides no factual support for his conclusory accusation that Allen intentionally denied Delk's request to move into another cell as part of the ongoing plot to kill Delk. Delk has stated no basis for a claim for relief against Allen.

*Defendant McKinnie*

Delk alleges that Defendant McKinnie intentionally moved Delk into a cell with a gang member after he had communicated to her that he needed to be in protective custody, was "in fear of his life and cannot be around any [C]rips or [B]loods [gang members] due

to his attacks." (ECF No. 31 at PageID 594.) Delk alleges that McKinnie knew about the previous attacks yet used "her authority" to move Delk into a cell with another inmate who assaulted him. (*Id.*)

Unlike Delk's allegations regarding the plot to have him stabbed, Delk sufficiently states a claim against Defendant McKinnie for deliberate indifference. Delk alleges that he told McKinnie he would be attacked if housed with a gang member, McKinnie knew Delk previously had been assaulted by a gang member, she then deliberately housed him with another gang member so that he would be attacked, and he then was attacked. These allegations suffice to show that McKinnie knew of and disregarded an excessive risk to Delk's health or safety. *Farmer*, 511 U.S. at 837-38.

### *Allegations Against Unspecified Defendants*

Throughout his complaint, Delk also makes various allegations against unspecified Defendants. (ECF No. 31 at PageID 539-40, 545, 549-51, 553-54, 556.) To the extent he attempts to assert claims based on those allegations, he has failed to state a plausible claim against any named Defendant. *See Twombly*, 550 U.S. at 570.

In conclusion, the Court DISMISSES Delk's claims against Defendants HCCF, Austin, Gates, Perry, Coreman, Brown, Willison, Robertson, Smith, Jackson, Brent, and Allen for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

It is ORDERED that the Clerk shall issue process for Defendants Molone, Woods, Louden, Dietz, Joy and McKinnie and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Molone, Woods, Louden, Dietz, Joy, and McKinnie

pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Delk shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Molone, Woods, Louden, Dietz, Joy, and McKinnie. Delk shall make a certificate of service on every document filed. Delk shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[5]

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[5] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.