# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| ADRIAN DESHUN DELK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 1:19-cv-00081 |
| THELMA BUMPAS, ET AL., | ) | JUDGE CAMPBELL |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. BACKGROUND

Plaintiff Adrian Deshun Delk, an inmate at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (Doc. No. 2) in the Western District of Tennessee on October 21, 2016. The United States District Court for the Western District of Tennessee granted Plaintiff leave to proceed as a pauper and assessed the filing fee against him on October 24, 2016, pursuant to the applicable provisions of the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915. (Doc. No. 6.)

On November 2, 2018, Plaintiff filed an amended complaint (Doc. No. 31), which the Western District screened under the PLRA on October 11, 2019. (Doc. No. 35.) In performing this initial screening, the Western District found that, although "Delk's primary claims relate to various incidents during his incarceration at [Hardeman County Correctional Facility]," "in his amended complaint he asserts additional claims against Defendants Laura Petty, Thelma Bumpas and Jasper Brew[st]er, employees at [South Central Correctional Facility]," a prison located within the Middle District of Tennessee. (*Id.* at 5.) The Western District found the claims against Petty, Bumpas and

Brewster misjoined with the remaining claims of the amended complaint, and so ordered their severance and transfer to this District, where venue is appropriate. (*Id.* at 6–7.)

This Court received the transferred filings (Doc. Nos. 3, 6, 27 and 31) on October 11, 2019. The amended complaint against Defendants Petty, Bumpas and Brewster is now before the Court for an initial review under the PLRA, 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## II. INITIAL REVIEW

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551

F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

In his amended complaint, Plaintiff alleges that he was assaulted and badly injured by other inmates at the Hardeman County Correctional Facility (HCCF) in West Tennessee, requiring emergency surgery at Regional One[1] "for a broken jawbone, head trauma, [and a] broken orbit[al] bone." (Doc. No. 31 at 10, 12.) Following the surgery on March 9, 2016 (*see* Doc. No. 31-11 at 1 (describing "surgery by ENT doctor on 3/9/2016")), Plaintiff was transported by van "back to the

---

[1] Regional One Health is a medical and surgical center in Memphis, Tennessee. *See* https://www.regionalonehealth.org/main-campus/ (last visited March 31, 2020); *see also* Doc. No. 1 at 39 (referring to "records from Memphis Regional One").

3

facility." (Doc. No. 31 at 12.) The van drivers failed to place a safety belt on him during this transport, and their "reckless driving forced [his] face to slam into the door, busting open his stitches inside his jawbone, where the metal plates were added." (*Id.*) This impact to Plaintiff's jaw and rupturing of his stitches caused him to bleed enough to choke on the blood and vomit. (*Id.*)

It appears from the amended complaint that, rather than taking Plaintiff directly back to HCCF, the transport took him to the nearby South Central Correctional Facility (SCCF), where he remained from March 10 through the end of April 2016. (*Id.* at 13–14.) He alleges that when he arrived at SCCF, unnamed employees pushed him around in a wheelchair in view of other inmates, causing him embarrassment due to his disfigured face. (*Id.* at 13.) On March 11, 2016, Plaintiff told Nurse Petty about hitting his face against the van door, and that he felt "a tooth hanging inside his wire[d] up jaw" and "need[ed] medical help from the outside." (*Id.*) Both Petty and Nurse Bumpas "refused the same medical help." (*Id.*) As a result, Plaintiff endured "an open wound in his mouth" that caused him pain and distress, about which he complained every day to Bumpas. (*Id.* at 38.)

On March 28, 2016, twenty days after the van transport, Plaintiff was taken back to his surgeon, Dr. Francisco Vierla, M.D., who replaced Plaintiff's ruptured stitches. (*Id.* at 13, 37.) As a result of the inaction of Petty and Bumpus on and after March 11, 2016—when these Defendants were informed by Plaintiff that the impact to his face in the van had caused a feeling that a bone or broken tooth was dangling inside of his jaw that had been wired shut—Plaintiff "received a nasty[,] painful infection" in his mouth. (*Id.* at 38.) These Defendants also "fail[ed] to give the Plaintiff his chlorohexidine g[lu]conate mouth wash meds," which was used "to keep the cuts and

4

teeth clean" while Plaintiff was unable to brush his teeth. (*Id.* at 39.) Plaintiff alleges that he went 39 consecutive days without this medicated mouthwash. (*Id.* at 13.)

Plaintiff alleges that from April 5 to April 18, 2016 and again from April 21 to April 27, Defendant Brewster, a dentist at SCCF, refused to replace broken rubber bands used to maintain the alignment of Plaintiff's jaw, with the knowledge that this would cause Plaintiff's jaw to heal crooked. (*Id.* at 14, 40.) He further alleges that on April 19, 2016, Brewster "put infected tools in Plaintiff['s] mouth and bust[ed] a stitch open," resulting in pain and swelling from April 28 to May 8. (*Id.* at 14.) Finally, Plaintiff alleges that Brewster would "feed Plaintiff season salt not cooked forcing plaintiff to lose weight causing more humiliation[.]" (*Id.*)

Plaintiff sues Petty, Bumpus, and Brewster in their individual capacities, seeking declaratory relief and damages. (*Id.* at 6, 9, 74, 79.)

**D. Analysis**

An Eighth Amendment claim for denial of medical care is comprised of an objective and a subjective component. "The objective component requires the plaintiff to show that the medical need at issue is 'sufficiently serious.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "As the Supreme Court explained in *Farmer*, '[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Thus, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). To satisfy the subjective component, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Richmond*, 885 F.3d at

5

939 (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

**1. Claims against Defendants Petty and Bumpas**

Plaintiff claims that Defendants Petty and Bumpas acted with deliberate indifference to his serious medical needs when they delayed before sending him for treatment outside SCCF. As regards the objective seriousness of the medical need at issue, "[w]here the alleged constitutional violation is a delay in medical treatment for a serious medical need, a slightly different analysis is employed to determine whether a plaintiff has satisfied the objective element of the test." *Kimbrough v. Core Civic*, No. 1:19-cv-00048, 2019 WL 2501558, at *2 (M.D. Tenn. June 17, 2019). In such cases:

> [The] court must examine the effect of the delay to ascertain whether the deprivation was sufficiently grave that it posed a substantial risk of serious harm. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). Where the delay-of-treatment claim involves an injury that is not obvious, a plaintiff must submit verifying medical evidence showing the detrimental effect of the delay. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004) (citing *Napier*, 238 F.3d at 742-43). Where the delay-of-treatment claim involves an obvious injury, a plaintiff makes the necessary showing by demonstrating that he experienced the need for medical treatment and that the need was not addressed within a reasonable time. *Id.* at 900. Where the injury is evident, the detrimental effect of the delay is not at issue because it is the delay itself which creates the substantial risk of harm. *Id.* at 890.

*Kimbrough*, 2019 WL 2501558, at *2.

Here, accepting Plaintiff's allegations as true, he arrived at SCCF immediately following surgery to address significant facial injuries, with his jaw wired shut. On March 11, 2016, he complained to Nurses Petty and Bumpas of feeling "a tooth hanging inside his wire[d] up jaw" after trauma to the jaw during his van transport, and "need[ing] medical help from the outside." (Doc. No. 1 at 13.) It took seventeen days for Plaintiff to be returned to Memphis for evaluation

and treatment by his surgeon. Of course, the full extent of the injury to Plaintiff's jaw would not have been immediately obvious to Nurses Petty and Bumpas. However, the fact that Plaintiff's jaw was wired shut would have been obvious, and it is reasonable to infer that these Defendants would have soon been made aware of the extent of his surgery on March 9. This condition, coupled with Plaintiff's report of trauma to the surgical site and the resulting pain and sensation of something "knocked loose" (*id.*), is sufficient for purposes of this initial review to establish his need for medical treatment. The Court also finds for these purposes that Plaintiff sufficiently alleges the unreasonableness of the 17-day delay in treatment. He has thus established the objective component of his claim against Petty and Bumpas.

With regard to the subjective component of Plaintiff's claim against these Defendants, he alleges that they "engaged in the misconduct of not getting plaintiff medical help on 3-11-2016" when he reported that he needed such help "from the outside" after the impact to his surgical site. (*Id.*). Plaintiff alleges that he developed a "nasty painful infection inside his open wound in his mouth," along with swelling and "blistering pain due to the failure to give Plaintiff his chlorohexidine gluconate mouthwash meds," which were eventually addressed by sending him back to Dr. Vierla in Memphis. At this initial stage, and liberally construing the amended complaint in Plaintiff's favor, he has adequately alleged that, on March 11, 2016 and the days that followed, Petty and Bumpas had a sufficient basis for knowing that he was at imminent risk of serious complications from the events and sensations he reported to them, and that they disregarded such risk, choosing instead to wait until his symptoms worsened before arranging his return to Dr. Vierla. (Doc. No. 31 at 37–38.) The claim against these Defendants will proceed for further development.

### 2. Claim against Defendant Brewster

Plaintiff alleges that, after his return from follow up care in Memphis, Defendant Brewster "fail[ed] to follow TDOC Policy 113.30(V) in providing the steps to replacing the Plaintiff['s] rubber bands on the wire in his jaw." (Doc. No. 1 at 40.) He appears to allege that his rubber bands broke and were eventually replaced by Brewster, a dentist who provided services to SCCF inmates, but that Brewster failed to order replacement bands in a timely fashion. (*See id.* at 14 ("the bands were broken from 4-5-2016 to 4-18-2016, and on 4-21-16 to 4-27th, 2016").) Plaintiff alleges that Brewster's failure to act "led to serious harm and injury that now needs medical assistance," because the delay in replacing the broken rubber bands allowed Plaintiff's jawbone to heal in the wrong position. (*Id.* at 40.) He specifically alleges that Brewster "knew that the Plaintiff['s] jaw was broken," that the rubber bands were "used to [realign] his jawbone," "[a]nd that the broken bands would effect the healing process of the jawbone." (*Id.*)

Following the analysis set out above, the Court finds that Defendant Brewster's failure to replace broken rubber bands used to maintain Plaintiff's jaw alignment—particularly over the two-week period "from 4-5-2016 to 4-18-2016," shortly following Plaintiff's return from treatment with Dr. Vierla—is sufficient for purposes of this initial review to establish an unreasonable delay in necessary medical treatment. *See Moss v. Mormon*, No. 99 C 3571, 2001 WL 1491183, at *4 (N.D. Ill. Nov. 26, 2001) (finding that "[t]he key aspect of the necessary post-operative care [for inmate's broken jaw] was the delivery of rubber bands during the first month after the surgery"). Moreover, Plaintiff adequately alleges that Brewster, a dentist, knew of the risk of malalignment resulting from the delay in replacing broken bands, and disregarded that risk. Thus, the amended complaint sufficiently alleges both the objective and subjective components of the Eighth

Amendment claim against Defendant Brewster. This claim will be allowed to proceed for further development.

However, Plaintiff's allegations that Brewster "put infected tools in [his] mouth and bust[ed] a stitch open," resulting in pain and swelling from April 28 to May 8, 2016, and that he fed Plaintiff uncooked "season salt" which Plaintiff could not eat (Doc. No. 1 at 14), do not assert more than negligent conduct and therefore cannot support a viable Section 1983 claim. *See Clark v. Corr. Corp. of Am.*, 98 F. App'x 413, 416 (6th Cir. 2004) (finding that "allegation of mere negligence in diagnosis or treatment is not actionable under § 1983"). Moreover, these are the kind of "naked assertions devoid of further factual enhancement" that are insufficient to support a valid claim. *See Iqbal*, 556 U.S. at 678. These allegations do not warrant further development.

### III. CONCLUSION

For the reasons given above, Plaintiff will be allowed to proceed with his deliberate indifference claims based on Defendants' delay in providing needed medical treatment.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE